*United States v. Reynolds*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of July, two thousand twenty-five.

Present:
> PIERRE N. LEVAL,
> MICHAEL H. PARK,
> > *Circuit Judges,*
> JED S. RAKOFF,[*]
> > *District Judge.*

---

UNITED STATES OF AMERICA,

> *Appellee,*

v.                                                        25-714

KEEMONT REYNOLDS,

> *Defendant-Appellant.*[†]

---

FOR DEFENDANT-APPELLANT:          BRIAN E. SPEARS, Spears Manning & Martini
                                                        LLC, Southport, CT.

FOR APPELLEE:                              STEVEN D. CLYMER, Assistant United States
                                                        Attorney, *for* John A. Sarcone III, First

---

[*] Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

[†] The Clerk of Court is respectfully directed to amend the caption accordingly.

Assistant United States Attorney for the Northern District of New York, Todd Blanche, Deputy Attorney General, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Suddaby, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

On November 1, 2023, Defendant-Appellant Keemont Reynolds was travelling in the back-seat of a car in Malone, New York.[1]   The vehicle was pulled over for traffic violations, and a search uncovered, among other things, three bags containing controlled substances in a hidden compartment behind the passenger-seat glovebox.   Reynolds was convicted, following a jury trial in the United States District Court for the Northern District of New York (Suddaby, *J.*), of conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C).[2]   On appeal, Reynolds argues that the evidence adduced at trial was insufficient to sustain his conviction.   We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

We review challenges to the sufficiency of the evidence de novo, but "must uphold the conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *United States v. Thiam*, 934 F.3d 89, 95 (2d Cir. 2019).   "In performing this analysis, we are required to draw all permissible inferences in favor of the government and

---

[1]   The car had two other occupants—Tyrece Franklin and Roderick Ingram.

[2]   Reynolds was acquitted of possession with intent to distribute controlled substances.

resolve all issues of credibility in favor of the jury's verdict," and "consider the evidence presented in its totality, not in isolation." *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021) (cleaned up).

"To sustain a conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Rodriguez*, 392 F.3d 539, 545 (2d Cir. 2004) (cleaned up). Here, the government was required to prove that Reynolds "knew the conspiracy involved controlled substances, and that he participated in the conspiracy with the specific intent that controlled substance be possessed by him and distributed." *United States v. Anderson*, 747 F.3d 51, 61 (2d Cir. 2014).

The evidence here was sufficient to sustain Reynolds's conviction. At trial, the government played recordings of several of Reynolds's post-arrest jail calls, during which he expressed suspicion that a police informant was the likely reason for the traffic stop, *see, e.g.*, Gov't App'x at 25, 28 ("I had too many haters; too many people that didn't want me to get money. . . . I already knew who snitched on me."), and acknowledged his responsibility for his arrest, *see, e.g.*, *id.* at 27 ("I got myself in this."). It can reasonably be inferred that Reynolds suspected an informant was involved because Reynolds engaged in criminal conduct and, given that the calls were made shortly after Reynolds had been arrested in connection with the narcotics, it would have been reasonable for the jury to infer that the conduct involved those narcotics. On the calls, Reynolds also repeatedly noted that he and his co-passengers had a common destination, *see, e.g.*, *id.* at 20 ("We were eight minutes late. . . . We were in the town."), which contradicted Reynolds's earlier statements to the police that he did not know their destination and was just "along with them for the ride," *see id.* at 10. *See also Anderson*, 747 F.3d at 60 ("In context, acts that exhibit

3

a consciousness of guilt, such as false exculpatory statements, may also tend to prove knowledge and intent of a conspiracy's purpose, although false exculpatory statements alone do not suffice to establish guilty knowledge." (cleaned up)).

Reynolds also testified in his defense. He claimed that the night before his arrest, he was in Manhattan and a friend named "Ty" offered him a ride, which he accepted; that he met Franklin and Ingram for the first time that night because they were in the car with Ty; that he consumed intoxicating substances, passed out in the car, and woke up in Northern New York; that he asked to be taken to a bus stop and was arrested on the way there;[3] and that he did not know there were drugs in the car until after he arrived in jail. But the jury plainly did not believe Reynolds and was permitted to "use its disbelief of [Reynolds's] testimony to supplement the other evidence against him." *United States v. Velasquez*, 271 F.3d 364, 371 (2d Cir. 2001) (cleaned up). Viewing Reynolds's testimony alongside the other evidence against him, the jury could reasonably conclude that he would not suspect that someone "snitched" on him or blame himself for his arrest if he had been in the car by accident and had no knowledge of the drugs in it. We thus conclude that the evidence at trial was sufficient to sustain Reynolds's conviction.

Reynolds argues that our recent decision in *United States v. Belloisi*, 164 F.4th 232 (2d Cir. 2026), compels a contrary conclusion. There, the government introduced evidence that the defendant—an airplane mechanic—accessed a compartment on a plane where drugs were hidden while carrying an empty tool bag, received a suspicious text from an unknown individual minutes before accessing the compartment, and falsely claimed to police officers that he was legitimately inspecting the compartment. *See id.* at 234-39. We reversed the conviction on narcotics-related

---

[3] The government introduced evidence at trial that there was no bus stop in Malone, where the car was pulled over.

4

conspiracy charges because the evidence at trial showed the defendant's participation in "an unlawful conspiracy of *some sort*," but not necessarily the specific conspiracy charged. *Id.* at 236. The evidence here, however, sufficiently connects Reynolds to the specific conspiracy charged. Among other things, Reynolds suspected an informant caused him to be arrested in connection with the narcotics he was travelling with, and he gave an implausible account of his presence in the car. Given that the jury disbelieved Reynolds, and there was no plausible other criminal conduct in which he might have been engaged—other than the charged conspiracy to distribute the drugs found in the car—*Belloisi* does not alter our decision to affirm.

\* \* \*

We have considered all of Reynolds's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

5